versus Pennsylvania Higher Education et al, number 20-648-BK. Good afternoon your honors. My name is Austin Smith appearing on behalf of the Pennsylvania Higher Education Assistance Authority. And Ms. Channer, as the briefs noted out, appeared at the bankruptcy court for the District of Connecticut, pro se, eight years after her bankruptcy was concluded, in which she obtained a discharge, seeking to enjoin the appellee, the Pennsylvania Higher Education Assistance Authority, from continuing to garnish her paycheck on a student debt that Ms. Channer had believed was discharged. And Ms. Channer believed this because when she obtained her discharge in 2010, there was a six-year, six-and-a-half-year interim where she heard nothing about the debt. The bankruptcy court concluded, based on what was the majority position at the time, that Ms. Channer must be mistaken because student loans are presumptively non-dischargeable. Since that time, two circuits, or even three circuits, I mean two panels in the Fifth Circuit and one panel at the Tenth Circuit, have visited some of the language from Espinoza and Tennessee v. Hood, the only two Supreme Court cases that dealt with student loan dischargeability. But I think importantly, in both instances, they were about student loan dischargeability generally, but they were targeted to very specific issues, neither of which was the posture in which we come before this court, which is asking this court to reverse enromance, to enable the parties to conduct discovery to determine whether or not Ms. Channer's loan is the type that is automatically dischargeable or the type that is presumptively non-dischargeable. As we noted, and as the district court noted, the bankruptcy discharge order itself acknowledges this fact where it says that the discharge will not discharge the debtor from most student loans and sales. The appellee has insisted that whatever else may have happened at the bankruptcy court or at least at least at this exhibition, there is enough of a record for this court, I assume what they're asking for, is to affirm even on other grounds. And as we put it on our brief, it's a bit unclear what the state of the record is, given that this was a motion to reopen a bankruptcy, which is a preliminary step to filing an adversary complaint. And as the Supreme Court noted in Taggart, most of the time this is done in state court. So either the creditor or the debtor goes into state court either seeking to obtain a judgment or seeking declaratory relief. And when that is done, it's obviously done on a 12B6 standard or 12B1. But this abuse of discretion standard for Ms. Channer operated as a, it seemed to sort of enable the parties to do some fact-finding or have the parties or the court to engage in some fact-finding. I believe the authorities from this court would have suggested at least that on a motion to reopen a bankruptcy proceeding, the matter of not race judicata, and I only say that as a means of sort of raising the issue of to the extent we are now trying to dissect the record to make new conclusions of law and new findings of fact, I don't think that that is consistent with Ms. Channer's due process rights, partly because well-tuned pro se and partly because if in fact the case wasn't opened, I don't know that factual findings could have been made as a matter of law. We do believe that the regulatory regime under which a lot of these blunders are made raises a number of questions, again, that I believe we can get into in discovery and get answers to. But based on the record before this court, we do submit that given the McDaniel decision from the 10th Circuit and the Crocker decision from the 5th Circuit, if this court were to affirm, it would then create a circuit split that would have to be resolved by the Supreme Court. And with that, I'll close my opening arguments and welcome any questions from the bench. All right. Judge Carney. Am I correct in understanding that on a denial of a motion to reopen, we're on abusive discretion review? Yes, Your Honor, that is correct. And I believe if you trace the case law now, what the Cialtani case, which is generally cited for that proposition in most of this court's work, sometimes or oftentimes even, motions to reopen a bankruptcy are very equivalent to a Rule 59 or a Rule 60 motion because they are seeking to sort of either set aside the discharge or some other redo of the work. And I do think that's critically important here, which is that Ms. Chenner was not trying to undo anything that had happened in the bankruptcy. She was simply trying to obtain declaratory relief and prospective injunctive relief regarding a historical event. That is, was the debt a declaration? Well, in her opening paper, she was. The court only treated it as a motion to reopen. So I don't believe that. I don't know if that's true. Okay. And so again, I think because she was seeking, you know, just a declaration in the preliminary step about what happened in 2010, whether or not the discharge encompasses that, although it is under the abuse of discretion standard as this court noted in Coombs, you know, that doesn't encompass erroneous positions of law, which we do believe exists in the record. Has she considered moving to reopen to seek an undue hardship determination? I noticed that she had written a hardship in her original papers, but had never actually sought that kind of determination that's the standard way of relieving oneself of a student loan debt. Is that something that's available to her? I believe, Your Honor, that that is something that is available to her. And that is certainly something that in the event if this were in fact a presumptively non-discernible debt, that would be her only way to get there. I believe as this court had noted in Renshaw, the initial burden is on the creditor to prove the debt that's in the statute. If the creditor satisfies that burden, then the burden shifts to the debtor to prove undue hardship. And in Renshaw, this court ultimately concluded that the creditor was unable to meet that burden because the student debt owed to the university in that instance was just an educational extension of credit, which is not non-discernible. And that was partly based on the fact that the interest rate was higher than New York law allows for loans. And so they were not going to construe the transaction to turn it into a user's loan. And therefore, it's enough that it's in the statute that it accepts loans guaranteed or made under a non-discernible program. And finally, do you agree with the appellee that the debt issue is the one listed on Schedule E that has the final digits 4788? I have no reason not to believe that, yes. That that was what Ms. Channer had scheduled the debt as, yes. And that debt was issued under the Federal Family Education Loan Program? That loan, yes. Which is a federally funded program? That's correct, Your Honor. And all I would note, as you said in the reply, is that since 2010, the FFEL program was divided into two different bodies of loans, what are called commercial FFEL loans, which are those are now, they are not entitled to governmental immunity. They're not even entitled to intergovernmental immunity. And as this Southern District of New York and the District of Columbia, these are not, this is not federal property anymore because the government has ceased to have a compelling interest in it. I also really have genuine questions about how it is this loan remains in the possession of the appellee 10 years after her discharge and default, given the regulatory scheme mandates that after 365 days of default without payment, an insured FFEL loan must be turned over to the Department of Education. And I raised that in our opening brief and did not understand the response to explain why it was that FFEL is in possession of this. And as I would only note, that is not an indestructible federal insurance program. There is tens of billions of dollars in FFEL loans that were de-insured, as they call it, because of various issues with origination or servicing that the federal government said, we are no longer going to stand behind that debt. And I believe at that point, it's just a private education loan. And actually the CFPB, this is your new advisory guidance on the distinction between former federal loans that become private loans in the last week. And so I do just ask the folks to note that the FFEL program has undergone significant changes over the last 10 years. And while it does absolutely appear by everything I can see, this loan wasn't made under the FFEL program. I don't know that it's ultimately going to turn out that it is currently a federal loan. Thank you very much. That's all I have. Thank you. Just following up on Judge Harney's last question, if I understood it, the federal government guaranteed the loan at the time it was made. Isn't that the relevant inquiry, even if I understand your response to be that there have been some changes since 2010? But I guess, is that even relevant? Your Honor, I would say that I believe it is relevant because the general rule in bankruptcy is that the debtor's petition date is what controls the character of the debt. And so while if the debt was insured in 2005 or 2006 when it was made, but the Department of Education stripped it of its insurance in 2008, I would certainly like the opportunity to argue that at the time the petition was filed, that would not have been characterized as a federal loan because the government had rejected it. Does that affect the chronology here? I don't know. I've checked every record that I can publicly access. I cannot find any record of the loan having been given to the Department of Education. The American Education Service, I believe, is the entity responsible for the appellee's private loan servicing, which is the name that appeared on the bankruptcy record. And so there are a number of questions, truly, that I have about what exactly is the character of this debt and what was the character of this debt on the day Ms. Chandler filed for bankruptcy and then Ms. Chandler discharged, which I do believe is the appropriate date to measure that. Absolutely. Okay. Thank you. Let me ask you, if I may, counsel, what exactly do you want from this court? What do you think is the appropriate decree of this court in your case? Yes, Your Honor. Thank you. I believe that the appropriate decree would be to reverse and remand and instruct the lower court to, I believe, do two things. One is to enable or allow Ms. Chandler to file an adversary complaint to engage in discovery and then have the parties attend, ultimately, an evidentiary hearing or at least a summary judgment hearing where the creditor, like in most advisory systems set up, put forward the evidence that it has. And it's not a terrifically onerous standard, but there has to be an actual adjudication of facts and conclusions of law made. I think regarding two issues, number one is via a governmental unit, which I think is an increasingly important question in light of the Sixth Circuit's decision in seven counties where it seemed to support the decisions in this court in Charter Oak and Stoltz that while admittedly seems to be dicta, suggested that a governmental unit under the bankruptcy code is not simply any entity that was created by the legislation, but in fact it bears some resemblance to an arm of the state if the two are not exactly coterminous. I think that's an important question particularly in light of the number of district courts and circuits who have found Ms. Fia is not entitled to arm of the state status. And then the second question would be whether or not Ms. Fia is a governmental unit, what is Fia's relationship to the debt, and is that of a servicer, a guarantor, an owner? And those two answers to those two questions I believe would create a final characterization of the debt that would then either be entitled to a presumption of non-dischargeability or would be discharged in 2010 and Ms. Chandler will be able to go on with her life having finally been discharged. Let me come at this another way. How would you describe the error, if it was an error, on the part of the bankruptcy judge and in turn on the part of the district judge? Yes, Your Honor, I believe... I'm sorry. What was wrong that was error? I believe two things were wrong that were error. Number one, I believe that the bankruptcy court, although it didn't cite to Espinosa or to Hood, it did cite to this court's decision, Easterling, with the statement that student loans are presumptively non-dischargeable. And I believe I would submit that the Fifth and Tenth Circuit's more recent decision that clarified that that was a general expression that was not intended to be interpreted as a positive statement of law, that was an error to pronounce that to Ms. Chandler as though it were a statement of law. If I understand, you take the view that that description of the law was inaccurate. Is that right? Yes, Your Honor, that is my position. And what did the bankruptcy court and or the district court rely on or what was the authority for that assertively improper or incorrect determination? Yes, Your Honor, I believe the bankruptcy court relied on a decision from the Eastern District of New York called Newman v. Educational Credit Management Corporation. And I believe that Newman in turn cites to I believe it's Espinosa, but I wouldn't want to sit on that without checking first. What about the Court of Appeals? What authority do we have on this? I think it's quite an important question. Yes, Your Honor. So this court or a panel of the court held in De Storme from I believe 2014 that the debtor in that case had a loan that had been characterized as an educational benefit and not to go down that rabbit hole. But that was the issue before the Fifth and Tenth Circuits more recently specifically whether all debts were non-dischargeable as educational benefits under 5.388. And the Fifth and Tenth Circuits noted in footnotes that the De Storme's call, the De Storme's decision did not accord with their view of the scope of 5.2388. Prior to that, this court's decision in O'Brien, Renshaw, and I believe it's Adamo were three decisions published by this court over the last 40 years regarding the scope of And both of those seem to read to me to support what the Fifth and Tenth Circuit also concluded that the discharge order itself says it applies to most people and it certainly doesn't apply to most people. We're not denying that. But those decisions really go through a very lengthy analysis to try to get at this question of whether or not the facts before the court merited a characterization of the type of student loan that Congress sought to make non-dischargeable. So although the De Storme's provision does seem to cut against that, I believe this court's other published decisions acknowledge that no, no, no, this is a limited provision that is designed to target certain types of obligations, but other types of student debts, which is not a defined term, are fully dischargeable under the code. Okay, thank you. Do either of my colleagues have any further questions for Mr. Smith? I don't. Me neither. Okay, Mr. Goldman? Yes, thank you, Your Honor. Can the panel hear me clearly? Yes, we can, I think. I can. Thank you. And as Judge Carney noted, the question before the court today is whether the bankruptcy court abused its discretion in denying Ms. Chandler's motion to reopen her bankruptcy case in order to pursue a motion for contempt against FEA. It is not correct that Ms. Chandler at any time sought to file an adversary proceeding which would have called into question FEA's status as a governmental unit or the question of undue hardship. All she sought to do was seek to find FEA in contempt. And I don't think there's any question that the bankruptcy court did not abuse its discretion in refusing to reopen the case because the underlying relief she was requesting was futile. Just a few preliminary observations before I start or continue with the formal remarks that I had prepared. There is no evidence which counsel has indicated took place with changes in the felt. There's no evidence presented to the bankruptcy court or argument that they applied to this case to any extent. There was no evidence or argument made to the bankruptcy court or the district court that the federal government disavowed this loan as a federally backed loan. And so the argument is being made for the first time to this court on appeal. And it should be deemed weighed. It is also not correct that this claim should be judged at the time of the bankruptcy filing. Just like any other claim that would be asserted in a bankruptcy case, a breach of contract case or a violation of a statute, the claim is judged at the time of the concession. And it will be allowed in an amount that will be determined as of the petition date. But it's judged from the time that the contract was entered into. And in this case, the felt loan. But getting back to my formal argument, I would first say that the bankruptcy court did not abuse its discretion because it would have been well within its discretion to deny the motion to reopen based solely on the fact that Ms. Chanter did not seek to file an adversary proceeding to determine the dischargeability of this loan. As the rules require, bankruptcy is subject to rule 7016 and as the Supreme Court held was required in Espinosa. That was one ground for the bankruptcy court's decision. But it also found after Ms. Chanter presented no evidence or any legal argument as to why FIIA was not a governmental unit that based on Pennsylvania law that formed and deemed FIIA as a government instrumentality and state agency. It was a governmental unit under section 101, 27 of the bankruptcy code. And therefore, the debt was not dischargeable under section 523A. Now, it can hardly be deemed an abuse of discretion to have denied a reopening of the case when nothing was presented in support of a contrary conclusion. Now, much ink has been spilled in this appeal about the presumptive dischargeability of student loans. But the bankruptcy court did not mention that concept at all in its decision. However, based on the record of the case, there was more than an adequate basis for applying that presumption in this case. The bankruptcy court had before it uncontested evidence that Ms. Chanter's student loan debt was evidenced by a cell program loan and promissory note. There were actually two in the record. A January 4, 2007 note, which was attached to the affidavit of Aaron reopening, and a later January 28, 2008 note, which consolidated loans approximating a little over $50,000, which corresponds to the debt that Ms. Chanter listed in Schedule E as a priority debt. And in the preceding page to that schedule, check the right there that this debt was owed to a governmental unit. And it's been acknowledged on the record that they don't dispute that fact. In addition, the bankruptcy court had the benefit of Pennsylvania law that I outlined. And under these circumstances, a presumption of non-dischargeability certainly would have been appropriately applied if the bankruptcy court chose to do so. A 11th Circuit decision cited by Ms. Chanter herself in Ray Darrisaw found that FEA was a quote, guarantee agency that guarantees student loans for the Secretary of Education under the cell program and held that FEA could not be considered a debt collector under the Fair Debt Collection Practices Act because it was collecting the student loan in a fiduciary capacity for the government. The 5th Circuit in Ray Murphy also found that FEA was a government agency and held that FEA as the holder of a felt loan, in that case, held a non-dischargeable student loan because the government also insured the loans against Murphy's default. So there were actually two bases for the presumption of non-dischargeability in this case. The felt loan, which is backed by the federal government, and FEA's guarantee of that loan as a guarantee agency for the Secretary of Education. Now Ms. Chanter also glosses over the fact that having filed a motion to reopen, it was her burden to demonstrate cause to reopen the case, not FEA's burden to establish if debt was non-dischargeable and she offered nothing in that regard. No argument was made to the Bankruptcy Court as to why FEA didn't qualify as a governmental unit and the only other argument she made that the debt was discharged because it was listed on her bankruptcy schedules has not been pursued on this appeal. It was only for the first time in her reply brief to the district court that Ms. Chanter raised the arm of the state argument that is her featured argument in this appeal. And I don't think it would be an understatement to say that if this court were to rule that the arm of the state analysis for 11th Amendment immunity and for liability as a person under the False Claims Act is the proper standard to apply to determine whether an entity like FEA is a governmental unit under the bankruptcy code, it would be a groundbreaking decision. No court has made such a ruling and a few courts have considered the argument, have summarily rejected it. And to hand down a rule of law where the argument for it hadn't even been made to the Bankruptcy Court, so the panelists without the benefit of its analysis, of course, would be, in my view, highly improvident. Apart from that, a holding that an entity must be an arm of the state under 11th Amendment immunity standard would contradict the plain meaning of the statute, which simply says that an entity must be an agency or instrumentality of the state or commonwealth to be a governmental unit. That determination I would submit should be made by reference to state law as it is for many other important purposes under the bankruptcy code, such as whether property of the debtor will be considered property of the bankruptcy estate and the allowance of claims against the estate, which is also Congress had intended an arm of the state analysis to govern whether an entity qualifies as a governmental unit. We wouldn't find some suggestion of it in the legislative history, but there is none. The legislative history does say, however, that the entity must be, quote, carrying out some governmental function, end quote. Now, even the Oberg case from the Third Circuit on which Ms. Channer heavily relies, acknowledged that by law, FEA was considered to be performing, quote, an essential government function, end quote. The Pennsylvania statute it cited, 24 PA stat section 5105.6, specifically states that FEA, quote, will be performing an essential government function and the exercise of the powers conferred upon it by this act, end quote. And that statute, I'm sorry. You have a minute left. You have one minute left. Thank you. That statute was in connection with deeming FEA's revenues to be tax exempt. So you have both the plain language of the statute supporting consulting Pennsylvania law on FEA's status as an instrumentality and agency of the state government, as well as the legislative history covered by that same statutory scheme. As far as the Seven Counties case, that case is inapposite. It was decided in connection with determining whether Seven Counties, or rather the debtor there was a municipality and therefore would not be entitled to file Chapter 11 because a municipality would only be qualified to seek relief under Chapter 9. And so it was issued in that context and not in the context of determining a governmental unit under Section 10127 of the Bankruptcy Code. And even if you consider those factors, they're all met in this case. They considered whether the state created the entity, whether the state could dissolve it, and who appointed the entity's board of directors, and how the state itself considered the entity. Well, all those check marks weigh in favor of holding that FEA is a governmental unit. It was created by the Commonwealth of Pennsylvania. It can be dissolved by the Commonwealth of Pennsylvania. Oberg in the Third Circuit acknowledged this. All of its directors are appointed by the governor, or they are state legislators. And of course, Pennsylvania itself considers FEA to be an instrumentality and a state agency. So that concludes my prepared remarks. And for those reasons, I submit the Bankruptcy Court's decision to be affirmed. And of course, welcome any questions from the panel. Judge Carney? Mr. Goldman, you have moved to strike the reply brief. There was a back and forth about the material in that reply brief. During argument today, Mr. Smith referred to McDaniel, a case decided at the end of August of this year that is discussed extensively in the reply brief. And just scanning the reply brief now, I see a number of 2020 decisions and references to McDaniel. We've also had a flurry of 28J letters, which have been kind of a brief and I guess we have a pending motion to strike, but I wondered if you could address McDaniel and how it bears on the case, because I'm not sure that you had a complete chance to do that. Thank you, Your Honor. McDaniel simply, in my view, has no relevance to the issue that is before the court. It dealt with the narrow question of whether an educational loan can constitute an obligation to repay funds received as an educational benefit, which is an entirely different section of the bankruptcy code than the one we're dealing with. McDaniel made some observations about the presumptive non-dischargeability of a student loan, saying that Espinoza, which is a short-hand rather than a judicial declaration, that Section 523AA accepts all student loan debt as non-dischargeable. But in my view, that's beside the point. We're not dealing with a case where there's a piece of loan paper or a promissory note that is simply stamped, this is a student loan debt that's non-dischargeable. We have much more than that. We have two fell promissory notes and loan agreements that are now acknowledged to have been paid under the fell program. We have evidence that was submitted in the form of Mr. Morrison's affidavit that he is the holder of those obligations, that it guaranteed them from inception and that they're in default. So certainly under those circumstances, I think we could say, and based on the case law that I cited, that considers fell to be a program funded by the federal government within the meaning of Section 523AA, a small little I. And you have the Pennsylvania authority that treats FEA as a government instrumentality and agency. You certainly have enough for a presumptive non-dischargeability of the student loan so that if somebody wanted to contest that FEA, the so-called changes that came about to the fell or other factors that challenged FEA's stand as a holder of this, that it would be incumbent upon them to submit proof of that. And nothing was submitted to the bankruptcy court. So again, it was... So I just want to say, so am I right in understanding that you would take a different position than Mr. Smith, that if we were to affirm we would be creating a circuit split? I understood that that's what he was saying. He referenced Daniel M. Crocker, and I take it that's not your view. Is that right? That is absolutely correct, Your Honor. This would create no circuit split whatsoever. This panel could easily find there was a presumptive non-dischargeability based on all the evidence and the law that existed on this that I've already gone over, as well as finding FEA to be a governmental unit. Judge Park? No questions. Thank you. Thank you very much. Mr. Smith? Hello? Sorry, Your Honor. I was on mute. Can you hear me? Yes, Your Honor. Can you hear me? Fine. You've got three minutes rebuttal. Thank you. I will be concise here. I tried to raise this issue a little bit in the opening statement. I'm not sure what evidence is on the record. I'm not trying to be coy about that. On a motion to reopen, it sounds like the appellee is contending that certain factual findings were made based on the evidence before the court. I don't believe that I'm denying a motion to reopen. You can make evidentiary findings. I simply don't think that Ms. Channer failed to address these points in her motion to reopen. I believe that she said explicitly that the loan did not fit within the statute, that FIA was not a governmental unit. The appellee seems to take great issue with her presentation during oral argument. I would suggest that a pro se elderly woman's oral presentation is not grounds upon which to make a waiver finding. I believe the authorities recited in our brief that pro se's are of course entitled to a lower burden. Even with that lower burden, she stated explicitly why she believed that FIA was not entitled to this presumption. The Murphy case from the Fifth Circuit, the appellee references, there were not fewer than seven factual findings made in that case. I believe it was summary judgment. That wasn't on the motion to reopen. And yes, FIA was the creditor in that case. I don't believe there's any findings that FIA was a governmental unit in that case. It may have been sub salento or it may have been in a different court, but the Murphy decision analyzed whether or not the debtor paying the loan through a financial aid office, whether or not the amount of the loan equaled the exact cost of attendance at the school. The fact that it was made under the cell program was one of several factors that the court analyzed. Again, that harkens back to this court's decision in Renshaw. I think there's enough for a presumptive finding. I submit it is not fair to say to come forward with evidence that a motion to reopen, I don't believe is consistent with this court's body of law. I will also say that in the Eleventh Circuit decision from Garisoff, although it's true that the court ultimately found that FIA was entitled to whatever the FDCPA immunity, it also stated a number of instances where FIA wouldn't. FIA, as we cited in our opening brief, has consistently been found to not be a guarantor. It has admitted itself and is now seeking to avoid the liability that comes with that. Mr. Goldman said that the state lost control. The problem is Grogan v. Gardner says, quote, the issue of non-dischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code since 1970. That's 498 U.S. 279. Whether or not Mr. Goldman thinks this should be decided under state law is irrelevant. It's foreclosed by Grogan v. Gardner. There are some issues that are decided by state law. Non-dischargeability is not one of them. And the last thing I would just say is that I do believe this would create a circuit, but I don't know how the Bankruptcy Court's decision can be affirmed without stating that state loans are presumptively non-dischargeable. May I just ask a quick question about that? Doesn't McDaniel deal with a different issue? Well, Your Honor, I believe McDaniel deals with two things. One of them was the sort of race judicata issue arising out of Espinoza, and the other was the educational benefits. The gateway procedural issue, I believe, in any student loan dischargeability proceeding is whether or not student loans are presumptively non-dischargeable or some are non-dischargeable. I do not doubt that the Bankruptcy Court's decision could be rewritten in such a way that would avoid a circuit split, but I don't believe that if the decision was disaffirmed, I think that I respectfully would conclude that that was splitting with the system. Thank you. Judge Clark? No questions. Thank you. All right. Well, thank you very much, Mr. Smith and Mr. Dolan. We will reserve the decision.